UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 13cr10275-(LTS) |
| v. | ) | Violations: 18 U.S.C. § 371 (Conspiracy) 18 U.S.C. § 1343 (Wire Fraud) |
| DAMIEN HESS, LUCAS FORD | ) | Forfeiture Allegations: 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 2461(c) |

**INDICTMENT**

The Grand Jury charges that:

**General Allegations**

At all times relevant to this Indictment:

1. Defendant **DAMIEN HESS ("HESS")** was an individual who resides in Laguna Niguel, California.

2. Defendant **LUCAS FORD** ("**FORD**") was an individual who resides in Post Falls, Idaho.

3. Quest Corporation, doing business as Quest Capital Finance, ("Quest") was a corporation organized and existing under the laws of Nevada and listed its office as at 27068 La Paz Road Suite 513, Aliso Viejo, CA 92656 and had its email server and website hosted in Boston, Massachusetts.

4. **HESS** was the Chief Executive Officer of Quest.

5. **FORD** was the Chief Operating Officer of Quest.

**COUNT ONE**
**(Conspiracy -- 18 U.S.C. § 371)**

6. The Grand Jury re-alleges and incorporates by reference paragraphs 1-5 of this Indictment and further charges that:

7. From a date unknown but no later than in or about January 2009, and continuing until the present, in the District of Massachusetts and elsewhere, the defendants,

(1) **DAMIEN HESS**
and
(2) **LUCAS K. FORD,**

conspired with each other, and with individuals both known and unknown to the grand jury, to commit Wire Fraud (18 U.S.C. §1343): to wit, having devised and intending to devise a scheme to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, to transmit and cause to be transmitted, in interstate commerce, wire communications, including writings, signs, signals, pictures, and sounds, for the purpose of executing the scheme to defraud.

**Object of the Conspiracy**

8. The object of the conspiracy were for **HESS** and **FORD** to fraudulently obtain money by stealing deposits from people and companies who sought to borrow money from Quest.

**Manner and Means of the Conspiracy**

9. In furtherance of the conspiracy, **HESS** and **FORD** and others known and unknown to the grand jury falsely represented that Quest was a financing company that could provide hundreds of millions of dollars of loans for businesses.

10. **HESS** and **FORD** and others on behalf of Quest represented to prospective borrowers that Quest could lend millions of dollars but that the borrowers first needed to pay

several hundred thousand dollars into a refundable escrow account, that is, into an account where the funds would be held by a third party until all contingencies for the loan were resolved.

11. In order to induce potential clients to place deposits with Quest, **HESS** and **FORD** and others acting on behalf of Quest falsely told prospective borrowers and others that Quest had hundreds of millions of dollars in wealth available to lend. On repeated occasions, **HESS, FORD** and others acting on Quest's behalf represented that Quest had the capital to be able to make such loans and only needed to obtain back-up or default protection for the loans that Quest had agreed to make.

12. **HESS** and **FORD** sent and caused others to send to potential borrowers a letter from Quest's attorney which made representations such as:

> Quest is a Nevada Corporation operating out of their home office in Aliso Viejo, California as a private equity lender.  They maintain a private asset base in the form of established banking relationships and credit lines, in order to finance qualified commercial projects.  Quest's niche is in the areas of mining, energy and technology, which includes the [SS] project.  Quest premises their ability to finance projects like yours by procuring a cash-backed bank instrument as a secondary or default collateral for your loan.  The bank instruments allow Quest to finance loans like [SS's] by equitably subrogating their rights in your secured collateral to their bank instrument provider.  Quest has fostered business relationships with three particular bank instrument providers and portfolio managers backed by corporate underwritten bonds, the identity of whom are kept strictly confidential except to say that they have an asset base of not less than $5,000,000,000.00 USD. . . . Quest is committed to meeting [SS's] financing needs, subject to your ability to meet both their underwriting guidelines and establish an escrow to procure the necessary bank instrument.  Although I do not participate in the underwriting process, I have received your Letter of Intent, which is to be supplemented by Quest with a more comprehensive Commitment Letter to follow under separate cover, and I know of no reason why your loan would not close and fund as set forth therein.

13. From in or about 2008 through 2012, **HESS** and **FORD** used such representations to persuade businesses and individuals to put hundreds of thousands of dollars into escrow accounts, as deposits towards future loans.

14. The escrow agreements pursuant to which these borrowers deposited the money into escrow explicitly and falsely represented that the funds would not be moved out of escrow unless and until all contingencies for the loan had been met and the loan was being funded. The escrow agreements contained language such as:

> Deposit shall be held in escrow until Lender completes its review of due diligence items provided in the LOI [Letter of Intent] and confirms in writing to the Borrower and the Escrow Agent that the Loan is approved and is not subject to any contingencies, that all loan or transaction documents have been prepared and are fully executed and held in a pre-closing escrow by Lender, that first draw of the funds for the Loan are now available and will be wire transferred to the Borrower upon Lender's receipt of the Bank Instrument, and that there are no impediments to proceeding with and closing the Loan.

15. In fact, shortly after the prospective borrower had deposited the money in escrow, **HESS** and **FORD** routinely took all or most of the escrowed money and transferred it to their company, Quest. They then transferred the funds to other business and personal accounts and uses. **HESS** and **FORD** repeatedly took such escrowed funds without actually arranging financing for the borrowers, let alone making the first draws of financing available to the borrowers.

16. **HESS** and **FORD** used the stolen deposits to pay for their own personal expenses, their lifestyles and other businesses, including a car business owned by **HESS**, trips to Disneyland, and plastic surgery, among other things.

17. In order to lull prospective borrowers and prevent them from detecting the fraud, **HESS, FORD** and others on behalf of Quest continued to promise the prospective borrowers that Quest would soon be providing millions of dollars of financing.

18. When the deadlines for the loan closings passed, **HESS** and **FORD** and others known and unknown to the grand jury made a series of excuses and false and misleading

representations to the prospective borrowers. These included false explanations as to why the funding was not yet ready and false promises that funding would be available shortly.

19. The false explanations included representations about banks returning letters of credit for technical reasons, and representations that financing had been delayed due to various holidays, weather delays or travel plans of those in the purported lending process.

20. When the borrowers finally asked for their deposits back, **HESS** and **FORD** and others at their direction provided additional false explanations and false promises that funds would be returned shortly.

21. In fact, **HESS** and **FORD** had spent much of the deposited funds that were supposed to have been held in escrow.

22. Quest did not provide financing nor did it refund any of the purportedly escrowed and refundable deposits set forth paragraph 23 below.

**Overt Acts In Furtherance of the Conspiracy and Scheme**

23. As set forth in the chart below, **HESS** and **FORD** diverted the following deposits, among others, to Quest and themselves on or about the following dates:

| Borrower Abbreviation | Amount Sent To Escrow | Date Funds Sent To Escrow | Date Funds Removed From Escrow | Amount Removed From Escrow |
|---|---|---|---|---|
| HH | $875,000 | 2/16/2011 | 2/18/2011 | $870,625 |
| BB | $100,000 | 4/8/2011 | 4/12/2011 | $99,000 |
| SS | $480,000 | 4/7-4/8/2011 | 4/19/2011 | $477,600 |
| CC | $400,000 | 6/27/2011 | 7/8/2011 | $400,000 |
| AA | $760,000 | 6/29/2011 | 7/12/2011 | $756,150 |
| PP | $280,000 | 9/6/2011 | 9/27/2011 | $278,550 |

24. On or about April 11, 2011, **FORD** sent an email to the escrow agent with a copy to **HESS.** The email stated that the loan for BB "is approved and is not subject to any contingencies. Please take this letter as your authorization to release escrow 39-6355-AH-[BB]."

25. On or about July 8, 2011, **FORD** sent a text to RP, a representative of SS located in Massachusetts, to reassure him that he would be receiving a partial refund of SS's deposit money shortly. The text falsely claimed "We did get the LC [Letter of Credit] issues handled with our provider . . . and wire confirmation and the 257K [that RP had been promised] should show up with us today."

26. On or about July 15, 2011, **FORD** sent a text to RP to explain why the expected funds had not yet arrived. The text claimed "Your wire went out however it went to the wrong wiring instructions. It was sent back to the client that was taking your place because of the associated escrow. . . . "

27. On or about September 23, 2011, **HESS** sent an email responding to RP's repeated requests for an update on the status of funding with a false claim that Wells Fargo bank was processing the loan documents. The email stated: "Lucas has your updates. Wells [Fargo] is almost finish with compliance. Lucas has given updates. Process is almost finished please. Follow up with Lucas. Lucas knows minute by minute."

28. On or about March 1, 2012, **FORD** emailed RP again with a copy to **HESS** claiming that the money was in process and about to arrive. The email stated: "Sit tight, this deal is done and nothing is stopping it. We're just waiting on the monetizing bank."

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO THROUGH EIGHT**
**(18 U.S.C. § 1343: Wire Fraud)**

29. The Grand Jury re-alleges and incorporates by reference paragraphs 1-5 and 8-28 of this Indictment, and further charges that:

30. On or about the following dates, in the District of Massachusetts and elsewhere, defendants,

(1) **DAMIEN HESS** and
(2) **LUCAS K. FORD,**

having devised and intending to devise and execute a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises concerning material facts and matters, transmitted and caused to be transmitted in interstate commerce by means of wire and radio communication, writings, signs, signals, pictures, and sounds, for the purpose of executing that scheme, the following emails, each of which travelled through Quest's email server in Boston, Massachusetts:

| Count | Date | From | To | Item |
|---|---|---|---|---|
| 2 | 2/17/2011 | **FORD** | Escrow Agent | Email re: Release of Escrow |
| 3 | 4/11/2011 | **FORD** | Escrow Agent Cc: **HESS** | Email re: Release of Escrow |
| 4 | 6/24/2011 | **FORD** | CC | Email re: Executed Escrow Agreement for CC |
| 5 | 7/11/2011 | **FORD** | AA | Email w/ Commitment Ltr for Quest $19 million loan to AA |
| 6 | 9/13/2011 | **FORD** | PP | Email w/ Commitment Ltr for Quest $7 million loan to PP |
| 7 | 9/19/2011 | **FORD** | SS | Email re: update 9-19-2011 |
| 8 | 9/23/2011 | **HESS** | SS | Email re: update 9-19-2011 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**FORFEITURE ALLEGATIONS**
**(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))**

The Grand Jury further charges that:

31. Upon conviction of one or more of the offenses charged in Counts One through Eight of this Indictment, the defendants

(1) **DAMIEN HESS**
and
(2) **LUCAS FORD**,

jointly and severally, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offenses, including but not limited to the sum of at least $2,881,925, which represents the proceeds of the offenses.

The property to be forfeited by the Defendants includes, but is not limited to, the following:

a. One carbon black 2010 Buick Enclave four door CXL, bearing California registration number 6MND710 and vehicle identification number 5GALVCED1AJ212575;

b. One black 2009 H2 Hummer four door SUV, bearing California registration number 6KXK234 and vehicle identification number 5GRGN83239H100294;

c. One black 2010 Cadillac Escalade four door AWD, bearing California registration number 6LRS176 and vehicle identification number 1GYUKDEF7AR202874; and

d. One black 2010 Chevrolet Camaro two door, bearing California registration number 6TVN113 and vehicle identification number 2G1FT1EWXA9187106.

32. If any of the property described in paragraph 31 hereof as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants --

a. cannot be located upon the exercise of due diligence;

  b.  has been transferred to, sold to, or deposited with a third party;

  c.  has been placed beyond the jurisdiction of this Court;

  d.  has been substantially diminished in value; or

  e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code Section 2461(c), incorporating Title 21, United States Code Section 853(p), to seek forfeiture of all other property of the defendants up to the value of the property described in paragraph 31 above.

  All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON OF THE GRAND JURY

SARA MIRON BLOOM
PATRICK CALLAHAN
ASSISTANT U.S. ATTORNEYS

DISTRICT OF MASSACHUSETTS September 25, 2013

Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK 9/25/13

12:20